UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER B., | ) |
|                 Plaintiff | ) |
| v. | )   No. 1:22-cv-00333-NT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|                 Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability and Supplemental Security Income appeal seeks remand for consideration of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g), *see* Motion for Remand (ECF No. 6), and, in the alternative, on the basis that the Administrative Law Judge (ALJ) erred in (1) ignoring his testimony concerning medication side effects and nebulizer usage and (2) rejecting the opinions of treating physicians concerning time off task and shoulder limitations, *see* Plaintiff's Brief (ECF No. 14) at 3-20. Because the Plaintiff fails to show that his new evidence is material to his condition during the period for which benefits were denied or that the ALJ's asserted errors require remand, I recommend that the Court deny his motion for remand and affirm the Commissioner's decision.

**I. Motion for Remand**

**A. Legal Standard**

Sentence six of 42 U.S.C. § 405(g) provides:

1

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).

Typically, a request for a sentence six remand concerns "new evidence . . . tendered after the ALJ decision." *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001) (cleaned up). Sentence six allows for a "pre-judgment remand" and obviates a ruling on the existing administrative decision based on the existence of good cause for remanding for further evidentiary proceedings. *See, e.g.*, *Seavey v. Barnhart*, 276 F.3d 1, 13 (1st Cir. 2001); *Freeman v. Barnhart*, 274 F.3d 606, 610 (1st Cir. 2001).

The First Circuit has cautioned that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided—to the end that the process not bog down and unduly impede the timely resolution of social security appeals." *Evangelista v. Sec'y of Health & Hum. Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). Thus, prejudgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is new and "material," as in "necessary to develop the facts of the case fully." *Id.* at 139.

New evidence of an infirmity or impairment is not automatically material. The party seeking remand must show that the evidence is not merely cumulative and that consideration of the evidence is essential to a fair hearing, *see id.*; in other words, that the earlier decision "might reasonably have been different" had the evidence been

2

considered by the Commissioner, *id.* at 140 (cleaned up). There is a temporal requirement, as well: The evidence must be material to the issue of "the claimant's condition during the time period for which benefits were denied." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).

## B. Discussion

As the Commissioner argues, *see* Remand Response (ECF No. 10) at 3-5, the Plaintiff's motion indicates on its face that the tendered new evidence is immaterial to his condition during the time period for which benefits were denied: March 29, 2014, through February 1, 2021, *see* Record at 717, 731.

The Plaintiff contends that his medical condition has "significantly worsened" since February 1, 2021, particularly starting in July 2022 with "multiple hospitalizations and procedures" for "acute respiratory failure with hypoxia, COPD [chronic obstructive pulmonary disease] with acute exacerbation, and acute hypoxic respiratory failure." Motion for Remand at 3-4. He argues that the "new evidence is probative of disability because it documents that [his] medical condition has severely deteriorated and that this deterioration appears to be long-term." *Id.* at 4. However, if a claimant "believes his condition has worsened since the date of the ALJ decision, his proper course of action is to initiate a new claim for benefits with the Social Security Administration." *Kuperman v. U.S. Soc. Sec. Admin.*, No. 08-cv-54-JD, 2008 WL 4159152, at *3 (D.N.H. Sept. 9, 2008) (denying motion for sentence six remand as immaterial because it did "not relate to the time period at issue").

The Plaintiff's motion for a sentence six remand, accordingly, should be denied.

3

## II. Appeal of ALJ Decision

### A. Legal Standard

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey*, 276 F.3d at 9. Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. Background

Following this Court's 2019 remand of this case for further consideration of treating physicians' opinions that the Plaintiff would be off task for periods of time during a workday, *see* Record at 717, 800-09, a new ALJ found, in relevant part, that the Plaintiff (1) had the severe impairments of a spine disorder, COPD, and a history of seizure disorder, *see id.* at 720; (2) retained the residual functional capacity (RFC) to perform light work except that in an eight-hour workday he could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and never work with concentrated exposure to

respiratory irritants, at unprotected heights, with dangerous moving machinery, or in extreme heat, extreme cold, or humid work environments, *see id.* at 722; (3) was capable of performing his past relevant work as a cashier/checker or, in the alternative, other jobs existing in significant numbers in the national economy— namely, those of routing clerk, photocopying machine operator, and cafeteria attendant, *see id.* at 730-31; and (4) therefore had not been disabled at any time from March 29, 2014, through the date of the decision, February 1, 2021, *see id.* at 717, 731. The Appeals Council found no reversible error, *id.* at 697-700, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a), (b)(2), 416.1484(a), (b)(2).

### C. Discussion

The Plaintiff contends that the ALJ erred in (1) ignoring his testimony that his medications made him sleepy and that he needed to use a nebulizer three or four times a day for fifteen minutes at a time, (2) rejecting the opinions of treating physicians Ganesha S. Santhyadka, M.D., Atul Soreng, M.D., and Nancy T. O'Neill, M.D., that he would be off task from fifteen to thirty-three percent of the workday, and (3) deeming his right shoulder impairment nonsevere. *See* Plaintiff's Brief (ECF No. 14) at 5-16. I find no reversible error.

#### 1. Side Effects of Medication & Use of Nebulizer

The Plaintiff testified that he took about a dozen medications daily that made him drowsy and caused him to "sleep a lot." Record at 774-75. He asserts that six of those medications are listed on Medlineplus.gov as "causing drowsiness, tiredness

5

and/or extreme tiredness," supplying objective support for his doctors' opinions that he would be off task. Plaintiff's Brief at 6. He contends that it was reversible error for the ALJ to "fail to discuss the expressly raised issue of side effects of medication," a proposition for which he cites *Zarrilli v. Astrue*, No. 08-82-B-W, 2008 WL 4936613, at *8 (D. Me. Nov. 16, 2008) (rec. dec.), *aff'd*, 2008 WL 5179109 (D. Me. Dec. 8, 2008), and *Munson v. Barnhart*, 217 F. Supp. 2d 162, 166 (D. Me. 2002). Plaintiff's Brief at 7.

*Zarrilli* and *Munson* are, however, distinguishable from the circumstances of this case. In *Zarrilli*, the ALJ erroneously relied on a claimant's 2006 report that he had no side effects from medications he was taking at that time, overlooking a 2007 report listing new medications known to cause the side effects of which he complained. *See Zarrilli*, 2008 WL 4936613, at *7-8. In this case, the ALJ made no such erroneous finding. In *Munson*, the ALJ ignored an issue of side effects of medication that was supported by the medical evidence of record, raising "a colorable claim" that the claimant suffered such effects. *See Munson*, 217 F. Supp. 2d at 165-66. While the Plaintiff now cites evidence from Medlineplus.gov, he identifies no medical evidence in the record before the ALJ creating a colorable claim that his medications caused the side effects of which he complained. *See* Plaintiff's Brief at 5-8; Plaintiff's Reply (ECF No. 16) at 4.

Absent such evidence, the ALJ's failure to address the Plaintiff's subjective allegations of side effects is not reversible error. *See, e.g.*, *De Jesus v. Sec'y of Health & Hum. Servs.*, No. 91-2169, 1992 WL 137507, at *3 (1st Cir. June 19, 1992)

(concluding that an ALJ "was entitled to disregard" a claimant's "testimony that the side-effects of her medications made her too sleepy to engage in work activity" when there "was no mention of this problem anywhere in the medical evidence"); *MacArthur v. Massanari*, No. 01-141-P-C, 2001 WL 1502579, at \*2 & n.4 (D. Me. Nov. 26, 2001) (rec. dec.) (citing *De Jesus* in holding that an ALJ's failure "to evaluate or even consider the side effects" that a claimant "testified resulted from taking the medication Percocet" was harmless when, apart from a onetime complaint that the claimant had made to a treating physician who did not indicate that he agreed, the record was "barren of any other medical evidence that Percocet does in fact cause such a side effect"), *aff'd*, ECF No. 5 (D. Me. Dec. 17, 2001).

The Plaintiff next contends that the ALJ erred in failing to make allowance for, or even mention, his testimony that he "would need to use" his nebulizer "three or four times per day for 15 minutes at a time." Plaintiff's Brief at 6. Again, I find no reversible error.

The Plaintiff testified that although he was supposed to use his nebulizer every four hours, he used it "about three times a day" for fifteen minutes at a time, with an additional one to two minutes for set-up. Record at 771-72. At oral argument, the Plaintiff's counsel calculated that the Plaintiff's total time off task daily from nebulizer use therefore ranged from forty-eight to sixty-eight minutes, noting that the vocational expert who appeared at his first hearing testified that two unscheduled breaks of fifteen minutes each would preclude all work. *See id.* at 58. However, even assuming that the Plaintiff would need to use his nebulizer twice during an

7

eight-hour workday, he identifies no evidence that those usages would be unscheduled, falling short of demonstrating any reversible error.

### 2. Time Off Task

More broadly, the Plaintiff argues that the ALJ erred in rejecting his three treating physicians' opinions that he would be off task for significant portions of the workday when neither "Dr. Manning"—the expert on whom the ALJ relied—nor any other expert apart from the treating physicians purported to address that issue. *See* Plaintiff's Brief at 8-14. He reasons that, in so doing, the ALJ impermissibly substituted her lay judgment for that of experts, requiring remand. *See id.* at 9. In several respects this contention is built on a faulty foundation.

First, in assessing the Plaintiff's RFC, the ALJ relied not only Dr. Manning's April 11, 2019, RFC assessment, undertaken for a Maine Department of Health and Human Services continuing disability determination, but also on a 2016 opinion of agency nonexamining consultant Sharon Hogan, M.D., that the Plaintiff could perform a reduced range of light work through his date last insured for SSD benefits, June 30, 2016. *See id.* at 106-08, 728-29, 968-76, 980-81.[1]

Second, the opinions of the treating physicians that the Plaintiff would be off task for significant portions of the workday were not "uncontradicted," as the Plaintiff

---

[1] At oral argument, the Plaintiff's counsel challenged the ALJ's reliance on Dr. Hogan for the period through June 30, 2016. As counsel for the Commissioner rejoined, that point is waived for failure to raise it in the Plaintiff's brief. *See, e.g.*, *Faye W. v. Berryhill*, No. 1:17-cv-00485-NT, 2019 WL 259435, at *5 (D. Me. Jan. 18, 2019) (rec. dec.) ("Issues or claims not raised in [a Social Security claimant's brief] will be considered waived and will not be addressed by this court." (cleaned up)), *aff'd*, 2019 WL 489084 (D. Me. Feb. 7, 2019).

contends. Plaintiff's Brief at 8. Drs. Manning and Hogan evaluated the Plaintiff's ability to sustain activities over a normal workday and workweek, and neither opined that he would be off task for an undue amount of time. *See id.* at 980 (directing that Dr. Manning evaluate the Plaintiff's "capacity to sustain the following physical activities over a normal workday and workweek on an ongoing basis"); *id.* at 106-08 (directing that Dr. Hogan evaluate the amount of time that the Plaintiff could sustain exertional activities over an eight-hour workday with normal breaks); SSA Program Operations Manual System (POMS) DI § 24510.057(B)(1)-(2), (4) (directing that Social Security adjudicators consider a claimant's ability or inability to sustain a forty-hour workweek; advising that "[i]nability to sustain a 40-hour workweek is an RFC finding").

Third, while the Plaintiff correctly notes that regulations governing the handling of opinion evidence in claims filed prior to March 27, 2017, apply, those regulations do not "expressly call for more weight to [be given] to the opinions of treating physicians, particularly a specialist such as Dr. Santhyad[]ka." Plaintiff's Brief at 11. Rather, they provide that "generally, . . . more weight" will be given to the medical opinions of treating sources than those of non-treating sources and specialists than those of non-specialists, 20 C.F.R. §§ 404.1527(c)(2), (5), 416.927(c)(2), (5), and direct the consideration of other factors, including supportability and consistency with the record as a whole, *see id.* §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight

9

we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *id.* §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Finally, the regulations direct that ALJs "always give good reasons . . . for the weight [they] give" to treating sources' medical opinions. 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). The ALJ did so here, explaining why she found little evidentiary support for the Soreng, Santhyadka, and O'Neill opinions, including their "off task" limitations. *See* Record at 726-29.

In these circumstances, the Plaintiff's challenge to the ALJ's omission of off-task limitations amounts to an unavailing invitation to the Court to reweigh the expert opinion evidence. *See, e.g.*, *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts."); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec.) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand."), *aff'd*, 2017 WL 2963371 (D. Me. July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019).[2]

---

[2] The Plaintiff points out that Dr. Manning did not see testing that Dr. Santhyadka cited in support of his 2020 opinion indicating a worsening of pulmonary functioning, with the Plaintiff's FEV1 score falling to 2.09 liters (only fifty-seven percent of the predicted volume) and his DLCO score to only thirty-six percent of the predicted capacity. *See* Plaintiff's Brief at 11; Record at 1230, 1236. Although, at oral argument, the Plaintiff's counsel characterized these findings as bad, he cited no record evidence so construing them or otherwise calling into question the ALJ's finding that "[s]pirometry

### 3. Finding of Nonsevere Shoulder Impairment

The Plaintiff finally asserts that the ALJ erred in rejecting the opinions of all three treating physicians and an agency examining consultant, David S. Axelman, M.D., that he had a severe shoulder impairment based only on her own layperson's view and to some extent the opinion of Dr. Manning, whose qualifications were unknown. *See* Plaintiff's Brief at 14; Record at 551-55. He argues that, at least for the "Title II period"—that is, the period from March 29, 2014, through June 30, 2016—the ALJ should have found a severe shoulder impairment. *See* Plaintiff's Brief at 16. However, as noted above, the ALJ relied in part on the opinion of Dr. Hogan, who assessed no shoulder-related limitations for the Title II period. *See* Record at 106-08, 728. The Plaintiff also faults the ALJ for relying on a purported lack of intensive treatment for his back or shoulder, arguing that "his ongoing medical records reflect essentially maintenance treatment, with medications and the Lidocaine patches, not for lack of symptoms, but for lack of better treatment options."

---

testing consistently describes mild to moderate diminishment of lung function." Record at 724; *see also id.* at 1230 (December 18, 2019, note of Dr. Santhyadka describing the spirometry findings cited by the Plaintiff's counsel as showing "[m]oderate" COPD). In any event, the ALJ supportably discounted the Plaintiff's allegations of limitations stemming from COPD on other bases, including his failure to follow Dr. Santhyadka's repeated advice to stop smoking cigarettes and an "intact range of activities of daily living," among them exercising regularly and performing some housework and outdoor work. *See id.* at 724-25; *Hadley v. Colvin*, No. 2:14-cv-77-JHR, 2014 WL 7369501, at *4 & n.3 (D. Me. Dec. 28, 2014) (holding that an ALJ did not err in discounting a claimant's subjective allegations in part because of her "noncompliance with medical advice to cease smoking"); *Hewes v. Astrue*, No. 1:10-cv-513-JAW, 2011 WL 4501050, at *7 (D. Me. Sept. 27, 2011) (rec. dec.) ("[W]hile a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing the [persuasiveness] of a claimant's allegations and in resolving conflicts in the evidence with respect to medical experts' and treating providers' opinions of a claimant's capabilities." (citations omitted)), *aff'd*, 2011 WL 4916460 (D. Me. Oct. 17, 2011).

Plaintiff's Brief at 10.  However, he cites no evidence in support of that proposition.  *See id.*

### IV.  Conclusion

For the foregoing reasons, I recommend that the Court **DENY** the Plaintiff's motion for remand and **AFFIRM** the decision of the Commissioner.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: September 13, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge